

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-13-00129-CV

_____

LEGENDS LANDSCAPES LLC, Appellant

V.

THOMAS BROWN D/B/A B&B CONSTRUCTION, Appellee

On Appeal from the 241st District Court
Smith County, Texas
Trial Court No. 130214C

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Carter

MEMORANDUM OPINION

Thomas Brown, doing business as B&B Construction, completed concrete and ground work for general contractor Legends Landscapes LLC.  When Legends purportedly refused to pay for the work, B&B sued for breach of contract, quantum meruit, and violation of the Texas Trust Fund Act.  B&B first attempted service at Legends' registered office.  B&B then substituted service on the Texas Secretary of State.[1]  Legends did not answer the suit.  On April 12, 2013, the trial court entered a default judgment in favor of B&B.  Legends filed this restricted appeal on September 26, 2013, raising several issues.[2]  While we find that we have jurisdiction over this restricted appeal, we conclude that the trial court lacked personal jurisdiction over Legends.  Therefore, we reverse the trial court's default judgment and remand the case for further proceedings.

## I.      Jurisdiction Over this Restricted Appeal

The Texas Supreme Court summarizes the elements of a restricted appeal as follows:

> A party can prevail in a restricted appeal only if:  (1) it filed notice of the restricted appeal within six months after the judgment was signed; (2) it was a party to the underlying lawsuit; (3) it did not participate in the hearing that resulted in the judgment complained of and did not timely file any postjudgment motions or requests for findings of fact and conclusions of law; and (4) error is apparent on the face of the record.

*Ins. Co. of State of Pa. v. Lejeune*, 297 S.W.3d 254, 255 (Tex. 2009); *see* TEX. R. APP. P. 30; *see also* TEX. R. APP. P. 26.1(c).  "These requirements are jurisdictional and will cut off a party's

---

[1] *See* TEX. BUS. ORGS. CODE ANN. § 5.251(1)(B) (West 2012).

[2] Originally appealed to the Twelfth Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts.  *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013).  We are unaware of any conflict between precedent of the Twelfth Court of Appeals and that of this Court on any relevant issue.  *See* TEX. R. APP. P. 41.3.

2

right to seek relief by way of restricted appeal if they are not met." *Clopton v. Pak*, 66 S.W.3d 513, 515 (Tex. App.—Fort Worth 2001, pet. denied). Here, B&B argues that this appeal is precluded because Legends filed a timely post-judgment motion.

Rule 329b of the Texas Rules of Civil Procedure requires that a motion for new trial or motion to modify, correct, or reform a judgment be filed within thirty days after entry of the judgment. TEX. R. CIV. P. 329b(a). The timely filing of such motions operates to extend the court's plenary power. TEX. R. CIV. P. 306a(l); *see* TEX. R. CIV. P. 329b(d), (e). Rule 306a(1) clarifies that the date the judgment is signed generally starts the clock on the thirty-day filing period contemplated by Rule 329b(a). TEX. R. CIV. P. 306a(l). However, this general rule is modified by the additional procedures set out in Rule 306a.

After stating the general rule, Rule 306a next establishes the procedure for providing notice to affected parties of the entry of an order or judgment. Pursuant to Rule 306a, "When the final judgment or other appealable order is signed, the clerk of the court shall immediately give notice to the parties or their attorneys of record by first-class mail advising that the judgment or order was signed." TEX. R. CIV. P. 306a(3). Rule 306a next carves out a significant exception to the previously discussed general rule that the deadline for filing post-judgment motions runs from the date the judgment was signed. Under the heading "No notice of judgment," Rule 306a(4) states,

> If within twenty days after the judgment or other appealable order is signed, a party adversely affected by it or his attorney has neither received the notice required by paragraph (3) of this rule nor acquired actual knowledge of the order, then with respect to that party all the periods mentioned in paragraph (1) shall begin on the date that such party or his attorney received such notice or acquired actual knowledge of the signing, whichever occurred first, but in no event shall

3

> such periods begin more than ninety days after the original judgment or other appealable order was signed.[3]

TEX. R. CIV. P. 306a(4); *see Moore Landrey, L.L.P. v. Hirsch & Westheimer, P.C.*, 126 S.W.3d 536, 539 (Tex. App.—Houston [1st Dist.] 2003, no pet.).

To take advantage of the extended time periods established by Rule 306a(4), the party adversely affected must "prove in the trial court, on sworn motion and notice, the date on which the party or his attorney first either received notice of the judgment or acquired actual knowledge of its signing and that this date was more than twenty days after the date the judgment was signed." TEX. R. CIV. P. 306a(5).

In this case, Legends filed a motion to extend post-judgment deadlines on June 11, 2013. The motion was verified by Evans and claimed that Legends first received notice of the default judgment in this matter on June 3, 2013.[4] Included with the motion, as attachments, were the affidavits of Legends' attorneys, Paul Jordan and Calvin L. Cowan, also claiming that they first received knowledge of the default judgment on June 3 and June 4, respectively. Legends' motion to extend deadlines stated, "Legends Landscapes filed this motion during the court's plenary power over the judgment. TEX. R. CIV. P. 306a(4) and (5)." Indeed, this motion was

---

[3]We note that the clerk's record contains a letter addressed to Legends informing it of the default judgment. However, while the address included in B&B's petition claimed that Legends could be served through its registered agent, Chandler Evans, at 9600 Great Hills Trail, Suite 150 West, Austin, Texas 78759, the clerk's notice omitted "9600 Great Hills Trail" from the address line. Moreover, while there were records introduced into evidence by B&B prior to entry of the default judgment that showed the mailing addresses for both Legends and Evans as "P.O. Box 897, Lexington, TX 78947," no notice was sent to that address.

[4]In the motion, Legends explained that Candice Schneider, Assistant Vice President of Prosperity Bank, contacted Evans on June 3, 2013, to inform him that Legends' bank account had been frozen pursuant to a writ of garnishment executed by authority of the default judgment. Prosperity Bank sent the citation and judgment to Evans via electronic mail on the same day. A copy of Schneider's correspondence, reflecting a transmittal date of June 3, was attached to the motion.

4

filed within ninety-days of the date the default judgment was entered. *See* TEX. R. CIV. P. 306a(4). The motion to extend deadlines prayed for a hearing and asked the trial court to fix June 3 as the beginning point for deadlines to file post-judgment motions and a notice of appeal. On June 24, 2013, Legends filed a motion for new trial and requested that the trial court hold a hearing on the motion.

Rule 4.2(c) of the Texas Rules of Appellate Procedure contemplates that, "[a]fter hearing the motion [to extend deadlines], the trial court must sign a written order that finds the date when the party or the party's attorney first either received notice or acquired actual knowledge that the judgment or order was signed." TEX. R. APP. P. 4.2(c). Here, despite Legends' repeated requests, the trial court took no action on the motion to extend deadlines. After several months of inactivity, Legends withdrew its motion to extend post-judgment deadlines on September 24, 2013. Four days later, on September 28, 2013, Legends filed a notice of restricted appeal, which asserted that no timely post-judgment motions had been filed.

The procedural hurdles that must be met before filing a restricted appeal are mandatory and jurisdictional in nature. *Robertson v. Hide-A-Way Lake Club, Inc.*, 856 S.W.2d 841, 843 (Tex. App.—Tyler 1993, no writ). The only question here is whether a timely post-judgment motion was filed.[5] TEX. R. APP. P. 30.

"[T]he supreme court has clarified that a rule 306a(5) motion may be filed at any time within the trial court's plenary power 'measured from the date determined under rule 306a(4).'" *Moore Landrey*, 126 S.W.3d at 540 (quoting *John v. Marshall Health Servs., Inc.*, 58 S.W.3d

---

[5]Pursuant to Rule 30 of the Texas Rules of Appellate Procedure, our analysis in this case is unaffected by Legends' September 24 withdrawal of its motion to extend deadlines.

738, 741 (Tex. 2001)). In other words, if properly completed, "the date of notice alleged in the rule 306a motion also controls the time period for determining if the rule 306a motion itself is timely." *Wells Fargo Bank, Nat'l Ass'n v. Erickson*, 267 S.W.3d 139, 148 (Tex. App.—Corpus Christi 2008, no pet.).

The sworn proof attached to Legends' motion to extend deadlines, which complied with Rule 306a(5), made a prima-facie showing that Legends neither received notice nor acquired actual knowledge of the default judgment against it within twenty days of the date the judgment was signed and that it first received notice of the default judgment on June 3, 2013. *See In re Lynd Co.*, 195 S.W.3d 682, 685 (Tex. 2006) (orig. proceeding); *Moore Landrey*, 126 S.W.3d at 540. By filing the motion to extend deadlines and presenting its prima-facie case within ninety days of the date the judgment was signed, Legends timely invoked the trial court's plenary power for the purposes of determining the date of notice of the judgment. *Lynd*, 195 S.W.3d at 685; *Moore Landrey*, 126 S.W.3d at 540. We find that Legends timely filed its Rule 306a(5) motion to extend deadlines.

However, a post-judgment motion is one that, if granted, would result in a substantive change in the judgment as entered, or extends the time for perfecting the appeal. *Hollis v. Hollis*, No. 12–09–00402–CV, 2010 WL 3440330, at *2 (Tex. App.—Tyler Sept. 1, 2010, no pet.) (mem. op.) (holding motion to substitute counsel does not constitute post-judgment motion within meaning of Texas Rule of Appellate Procedure 30). The granting of a Rule 306a(5) motion does not result in a substantive change in the judgment entered. If granted, it merely permits the timely filing of post-judgment motions. Furthermore, a Rule 306a(5) motion does

6

not extend the time for perfecting an appeal unless the court signs a written order "that finds the date when the party or the party's attorney first either received notice or acquired actual knowledge that the judgment or order was signed." TEX. R. APP. P. 4.2; *see Aviation Composite Techs., Inc. v. CLB Corp.*, 131 S.W.3d 181, 186 (Tex. App.—Fort Worth 2004, no pet.). Here, the court did not hold a hearing and did not enter a written judgment finding the date of notice. Therefore, the filing of the motion to extend deadlines itself did not extend the appellate timetable.

Thus, we must determine whether the motion for new trial was timely. Here, the sworn motion and affidavits (and the incorrect address on the clerk's notice) made a prima facie showing of lack of notice, which is unrebutted by anything in the record. Legends asked the court several times to set the Rule 306a(5) motion for hearing. The court's refusal to do so was an abuse of discretion which was reviewable by mandamus. *See generally Cantu v. Longoria*, 878 S.W.2d 131 (Tex. 1994). Because Legends made a prima facie case of lack of notice, and the trial court refused to rule on the repeated requests for a hearing, the trial court was bound to accept June 3, 2013, as the date of notice of the judgment. *See Thermex Energy Corp. v. Rantec Corp.*, 766 S.W.2d 402, 406 (Tex. App.—Dallas 1989, writ denied); *Womack-Humphreys Architects v. Barrasso*, 886 S.W.2d 809, 816 n.9 (Tex. App.—Dallas 1994, writ denied) ("[A]t any rule 306a hearing the trial court is free to believe or disbelieve a movant's jurisdictional evidence or believe or disbelieve the nonmovant's contradicting evidence. However, absent a hearing, the trial court is bound to accept the movant's sworn affidavit as true."), *overruled on other grounds by John v. Marshall Health Servs., Inc.*, 58 S.W.3d 738, 741 (Tex. 2001); *Van Der*

7

*Veken v. Joffrion*, 740 S.W.2d 28, 31 (Tex. App.—Texarkana 1987, no pet.) (In the context of a verified motion for new trial,[6] "when the movant properly raises his points by sworn pleadings or affidavit and requests a hearing, as in the present case, and no evidentiary hearing is held, the court is bound to accept the sworn pleadings or affidavit of the movant as being true.").[7]

However, appellate timetables are not calculated from the date on which the court makes an oral determination, or from the date when it had information requiring a certain result. Appellate timetables are calculated from the date on which the trial judge signs a judgment or appealable order. TEX. R. CIV. P. 329b. To establish the date a party received notice of a judgment, "the trial court is required to hold a hearing and make the requested finding." *Cantu*, 878 S.W.2d at 132. Without a written order by the trial court of the date when Legends or its attorney first either received notice or acquired actual knowledge of the judgment, Legends had no right of appeal. *Id.* Even though the only information before the court would require a specific later date to be applied, the trial court did not take the necessary action of signing an order to that effect.

---

[6]Correspondence from the Smith County District Clerk reveals that the motion for new trial was verified, recited that Legends did not have notice of the judgment until June 3, 2013, and attached affidavits from Jordan and Evans swearing to the lack of notice.

[7]There are occasions where a determination of the date the notice that a judgment was received can be implied from a court's ruling. The Texas Supreme Court has expressly rejected the argument that a trial court does not have plenary power to review a motion for new trial until it makes a written finding on the date of notice. *Lynd*, 195 S.W.3d at 685. In *Lynd*, a hearing was conducted on a motion to establish the date of the judgment notice and a motion for new trial. The trial court granted Lynd's motion for new trial, but failed to make a written finding of the date Lynd first received notice of the judgment. The opposing party argued that, without a trial court finding of the date Lynd received notice of the judgment, the trial court's plenary jurisdiction had expired and the trial court had no jurisdiction to grant a new trial. The Supreme Court held that, the sworn motion of Lynd was prima facie proof of the date notice was received. It further held that by granting the new trial, the trial court implicitly found Lynd received notice of the judgment on the date Lynd established by an uncontroverted sworn motion. Here, no hearing was conducted and, therefore, there is no order on which to base an implied finding of the date Legends first received notice of the judgment. *Id.* at 686–87.

8

Without an order by the trial court establishing a later date, the calculation of appellate timetables remains the original date on which the judgment was signed. Therefore, Legends' June 11, 2013, motion for new trial was untimely, it did not serve to extend the trial court's plenary power over the April 12, 2013, judgment, and the restricted appeal is not precluded on that basis. Legends has fulfilled all requirements for filing a restricted appeal. We will now address its contentions.

## II.     The Trial Court Lacked Personal Jurisdiction Over Legends

A goal of the Texas Rules of Civil Procedure is to protect the rights of all litigants. *AAA Navi Corp. v. Parrot-Ice Drink Prods. of Am., Ltd.*, 119 S.W.3d 401, 402 (Tex. App.—Tyler 2003, no pet.) (citing *Seib v. Bekker*, 964 S.W.2d 25, 27 (Tex. App.—Tyler 1997, no pet.)). Legends argues that B&B failed to comply with Rule 107, which reads, "When the officer or authorized person has not served the citation, the return shall show the diligence used by the officer or authorized person to execute the same and the cause of the failure to execute it, and where the defendant is to be found, if he can ascertain." TEX. R. CIV. P. 107. Legends argues that the default judgment must be reversed because no unexecuted return of citation, process server's affidavit, or motion for substitute service existed in the record at the time it was entered.

Evidence of proper citation and return of service is crucial to establishing personal jurisdiction. *In re Z.J.W.*, 185 S.W.3d 905, 906 (Tex. App.—Tyler 2006, no pet.). The return of service of process under the Rules is not a trivial or formulaic document. *AAA Navi Corp.*, 119 S.W.3d at 402 (citing *Primate Constr., Inc. v. Silver*, 884 S.W.2d 151, 152 (Tex. 1994)). In order to protect a defendant's due process, "the trial court has a duty to ascertain and determine

9

that the defendant has been duly served with citation and that he does not have an answer on file" prior to entering a default judgment. *Id.* (citing *Finlay v. Jones*, 435 S.W.2d 136, 139 (Tex. 1968)); *see In re E.R.*, 385 S.W.3d 552, 556 (Tex. 2012). The trial court's determination on this matter can be challenged through a restricted appeal.

A restricted appeal is considered a direct attack on a default judgment. *AAA Navi Corp.*, 119 S.W.3d at 403 n.1 (citing *Lewis v. Ramirez*, 49 S.W.3d 561, 564 (Tex. App.—Corpus Christi 2001, no pet.)). "In the face of . . . direct attack, there are no presumptions in favor of valid issuance, service, or return of the citation." *Id.* (citing *Silver*, 884 S.W.2d at 152); *see Uvalde Country Club v. Martin Linen Supply Co.*, 690 S.W.2d 884, 885 (Tex. 1985). Strict compliance with the rules for service of citation must affirmatively appear on the record in order for a default judgment to withstand direct attack. *Lejeune*, 297 S.W.3d at 255. "Failure to comply with these rules constitutes error on the face of the record." *Id*. at 256.

However, when the defendant is a corporation, service of process is governed by the Texas Business Organizations Code. *See AAA Navi Corp.*, 119 S.W.3d at 403. A corporation is required to continuously maintain a registered agent for service of process and a registered office. TEX. BUS. ORGS. CODE ANN. § 5.201 (West 2012); *Campus Invs., Inc. v. Cullever*, 144 S.W.3d 464, 466 (Tex. 2004). If the "registered agent of the entity cannot with reasonable diligence be found at the registered office of the entity," the Secretary of State becomes the agent for service of process on the corporation. TEX. BUS. ORGS. CODE ANN. § 5.251(1)(B). When

substituted service on the Secretary of State is allowed, the Secretary "is not an agent for *serving* but for *receiving* process on the defendant's behalf." *Cullever*, 144 S.W.3d at 466.[8]

Service of process on the Secretary of State is accomplished by delivering duplicate copies of the process and any required fee. TEX. BUS. ORGS. CODE ANN. § 5.252 (West 2012). After service on the Secretary of State, the Secretary forwards the process to the corporation by certified mail, return receipt requested. TEX. BUS. ORGS. CODE ANN. § 5.253 (West 2012). When substituted service on the Secretary of State is authorized, a certificate of service from the Secretary of State conclusively establishes that process was properly served, and filing the certificate dispenses with the requirement in Rules 107 and 239 of the Texas Rules of Civil Procedure that the citation and return be filed. *Cullever*, 144 S.W.3d at 466; *see Lopez*, 359 S.W.3d at 828. Here, the certificate stated that the Secretary of State mailed a copy of the citation and petition to Evans at the registered address, but that they were returned as undeliverable. B&B relies on its procedural compliance with the Texas Business Organizations Code to combat Legends' claims.

In its original petition, B&B alleged that Legends could be served through its registered agent, Chandler Evans, at 9600 Great Hills Trail, Suite 150 West, Austin, Texas 78759. On January 24, 2013, a citation was addressed to Evans at this address, but it was never returned. On February 6, 2012, B&B forwarded its original petition to the Secretary of State and asked that process be accepted on Legends' behalf. The Secretary of State acknowledged receipt of the

---

[8]Because Section 5.251 is an independent statute that provides for substituted service, no motion for substituted service pursuant to Rule 106 of the Texas Rules of Civil Procedure is required. *BLS Dev., LLC v. Lopez*, 359 S.W.3d 824, 828 (Tex. App.—Eastland 2012, no pet.).

11

citation and petition on February 11, 2013, and attempted to forward the same to Evans on February 27, 2013, at the address provided in the original petition. However, the process was returned to the Secretary of State on March 4, 2013, as undeliverable.

On March 22, 2013, B&B provided records to the court showing that the Secretary of State had been served with citation on February 11, 2013. B&B also included (1) Legends' 2003 Articles of Organization confirming that Evans, who was listed as the registered agent for service of process, could be reached at the same address that was provided by B&B in this original petition, (2) Legends' 2004–2006 franchise tax receipts showing that Evans' address was the same address that was provided by B&B in this original petition, and (3) documentation demonstrating that the address listed in the original petition was listed as the registered office.[9] Based on this documentation, B&B filed a motion for default judgment against Legends, which the trial court granted.

Legends does not argue that the Secretary of State was improperly served. Rather, its challenge is rooted in the fact that the use of reasonable diligence in attempting to serve a corporation's agent is a prerequisite to attempting service through the Secretary of State. *See* TEX. BUS. ORGS. CODE ANN. § 5.251(1)(B); *see also AAA Navi Corp.*, 119 S.W.3d at 403; *Marrot Commc'ns, Inc. v. Town & Country P'ship*, 227 S.W.3d 372, 378 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) (although Secretary of State's certificate constitutes conclusive evidence Secretary of State, as agent of defendant, received service of process for defendant and

---

[9]Although Legends' registered address never changed, the attachments provided by B&B to the trial court on March 22, 2013, also showed, in Texas Franchise Tax Public Information Reports, that both Legends' and Evans' address was changed in 2008 to P.O. Box 897, Lexington, Texas 78947. Section 5.251 only requires the exercise of diligence to find the registered agent "at the registered office of the entity." TEX. BUS. ORGS. CODE ANN. § 5.251(1)(B); *see Cullever*, 144 S.W.3d at 466.

forwarded service as required by statute, certificate does not establish that the registered agent could not, with reasonable diligence be found at registered office).

"'A default judgment obtained after an attempted substituted service [on the Secretary of State] will not stand absent a showing by the plaintiff that, before it resorted to substituted service [on the Secretary of State], it first used reasonable diligence in seeking service on the registered agent of the corporation.'" *Marrot Commn'ns, Inc.*, 227 S.W.3d at 377 (quoting *Ingram Indus., Inc. v. U.S. Bolt Mfg., Inc*., 121 S.W.3d 31, 34 (Tex. App.—Houston [1st Dist.] 2003, no pet.)); *BLS Dev.*, *LLC v. Lopez*, 359 S.W.3d 824, 827–28 (Tex. App.—Eastland 2012, no pet.) ("'Before a filing entity resorts to substituted service under the applicable statute[,] . . . the *record* must show that the . . . registered agent could not with reasonable diligence be found at the registered office.'") (quoting *Collective Interests, Inc. v. Reagan Nat'l Adver*., No. 03-08-00283-CV, 2010 WL 2977458, at *3 (Tex. App.—Austin July 29, 2010, no pet.) (mem. op.) (discussing former TEX. BUS. CORP. ACT art. 2.11(B))).

It is undisputed that the return of citation was not signed and returned prior to B&B's utilization of substituted service. However, because a certificate from the Texas Secretary of State conclusively established that process was served, there is no requirement that the default judgment record include the citation and return *if* the record shows that due diligence was exercised prior to employing substituted service. *Cullever*, 144 S.W.3d at 465–66.

On July 13, 2012, well after the trial court's entry of a default judgment, B&B filed a due diligence affidavit executed by its process server, Brent Pendleton, who averred that he (1) was instructed to attempt service on Evans, (2) verified the address of Legends' registered office with

13

the Secretary of State, (3) attempted to obtain service of process at the registered office, and (4) could not find Evans at the registered office. Pendleton also stated that, after questioning the other tenants in the building, he learned that Evans and Legends had vacated the premises several months before the attempted service.

Legends argues that this affidavit cannot be considered by this Court because it was filed after the trial court entered its default judgment. B&B cites to several cases stating that we look at the record as a whole, not just to an unexecuted citation, to determine the issue of due diligence. *See G.F.S. Ventures, Inc. v. Harris*, 934 S.W.2d 813, 816 (Tex. App.—Houston [1st Dist.] 1996, no writ); *Maddison Dual Fuels, Inc. v. S. Union Co.*, 944 S.W.2d 735, 738 (Tex. App.—Corpus Christi 1997, no writ); *Ingram*, 121 S.W.3d at 34. While B&B's characterization of these cases is correct in the sense that we may look beyond the unexecuted citation, we do not believe the cases stand for the proposition that we may consider evidence that was not before the trial court at the time the default judgment was entered. "[I]n order for a default judgment to be properly rendered, the record must affirmatively show, *at the time the default judgment is entered*, either an appearance by the defendant, proper service of citation on the defendant, or a written memorandum of waiver." *Marrot*, 277 S.W.3d at 378. We conclude that, because the process server's affidavit was not before the trial court at the time the default judgment was entered, it cannot be considered. *See Deutsche Bank Nat'l Trust Co. v. Lewis*, No. 12-12-00198-CV, 2012 WL 5993731, at *2 (Tex. App.—Tyler Nov. 30, 2012, no pet.); *see also Midstate Envtl. Servs.*, *L.P. v. Peterson*, No. 10-13-00138-CV, 2014 WL 685567, at *1 (Tex. App.—Waco Feb. 20, 2014, no pet. h.) (mem. op.); *Paramount Credit, Inc. v. Montgomery*, No. 01-12-

14

00733-CV, 2013 WL 6699497, at *2 (Tex. App.—Houston [1st Dist.] Dec. 19, 2013, no pet.);

*Grant v. Thomas*, No. 09-11-00260-CV, 2012 WL 1142928, at *1 (Tex. App.—Beaumont

Apr. 5, 2012, no pet.) (mem. op.); *Leonard Manor, Inc. v. Century Rehab. of Tex., L.L.C.*, No.

06-09-00036-CV, 2009 WL 2878016, at ** 1–2 (Tex. App.—Texarkana Sept. 10, 2009, pet.

ref'd) (mem. op.); *Marrot*, 277 S.W.3d at 378.

There was some evidence presented to the trial court before it entered its judgment. At

the default hearing, B&B's counsel testified,

> [W]e sent a process server to the address that was on file with the Secretary of State as the registered office for the limited liability company, Legends Landscapes, L.L.C., and he reported back to me that they were no longer at that location.
>
> We contacted the owner of the premises, and they were no longer a tenant of those premises. We contacted the neighbors, who confirmed that they had moved out of the location, and they still did see mail go to them at that location, but it was returned. They had no information as to where Legends Landscapes, L.L.C. went at that time.
>
> We again went by the office -- the registered office, and confirmed that with the Secretary of State who did confirm that was -- and that's in our notice, Your Honor -- that that still was the registered office and still is today, or at least as of yesterday, the registered office of this Legends Landscapes, L.L.C.
>
> So we have -- we have done all things necessary, reasonable and prudent to determine where their registered office and registered agent is, and he is nowhere to be found.
>
> So based on that, we, under the statute, served the Secretary of State as the registered -- as the agent for service of process, and delivered to the Secretary of State two copies of the citation, as required, plus our transmittal letter. Those are proved up in our filings, two copies of the citation with the original to be served at the registered office. Our check number 2088 in the amount of $55, which is the required fee by the Secretary of State to accept service and perfect service upon a defendant who does not or cannot be found at a registered office.

Counsel's testimony established that (1) a process server was sent to the address on file with the

Secretary of State, (2) Legends Landscapes LLC was no longer at the location, (3) Legends

15

Landscapes LLC, was no longer a tenant, and (4) other tenants did not know how to locate Legends Landscapes LLC. Citing to *Maddison Dual Fuels*, Legends argues this testimony was insufficient to establish due diligence in serving Evans. We agree.

The record in *Maddison Dual Fuels* included a "Diligence of Service Form" containing the process server's statement that service "was not executed as to subject MADDISON DUAL FUELS, INC. . . . and the cause of failure to execute this process" is "Bad Address." *Maddison Dual Fuels, Inc.*, 944 S.W.2d at 738. *Maddison Dual Fuels* held that the diligence service form was deficient because (1) service is not permitted on an intangible entity, (2) service must be made on the registered agent, and (3) the form, which spoke of attempts to serve the company, did not mention the registered agent or what attempts, if any, were made to locate him. *Id.* Similarly, counsel's testimony in this case only referenced an attempted service on Legends, an intangible entity, and did not speak to the process server's attempts to locate or serve Evans. *See RWL Constr., Inc. v. Erickson*, 877 S.W.2d 449 (Tex. App.—Houston [1st Dist.] 1994, no writ) (constable's notation, "Unable to serve def. Moved a year ago . . . Unknown fording [sic] address." insufficient to establish diligence in serving defendant's registered agent); *see also Univ. Well Serv., Inc. v. Applied Survey Sys., Inc.*, No. 11-11-00335-CV, 2013 WL 3203430, at **2–3 (Tex. App.—Eastland June 20, 2013, no pet.) (citing *Wright Bros. Energy, Inc. v. Krough*, 67 S.W.3d 271, 274 (Tex. App.—Houston [1st Dist.] 2001, no pet.); *Nat'l Multiple Sclerosis Society-North Tex. Chapter v. Rice*, 29 S.W.3d 174, 177 (Tex. App.—Eastland 2000, no pet.); *Gen. Office Outfitters, Inv. v. Holt*, 670 S.W.2d 748, 750 (Tex. App.—Dallas 1984, no writ)).

Therefore, we conclude that the evidence did not establish due diligence on B&B's behalf to serve Evans.

The evidence demonstrating B&B's diligence in serving Evans was not before the trial court when it entered its default judgment. Thus, B&B was not authorized to serve the Secretary of State under the Texas Business Organizations Code. Instead, B&B was required to show strict compliance with the Texas Rules of Civil Procedure, including Rule 107. Strict compliance with these Rules has not been shown. Thus, the court did not have personal jurisdiction over Legends, and the default judgment cannot stand. *See Marrot*, 227 S.W.3d at 377. We sustain Legends' dispositive complaint.

## III. Conclusion

We reverse the trial court's judgment and remand the case to the trial court for further proceedings.

Jack Carter
Justice

Date Submitted:     January 28, 2014
Date Decided:     March 27, 2014

17